UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

CHARLES GROVER,

        Plaintiff,

   v.

DRAEGER, INC., *et al*

        Defendants.

No. 1:22-cv-00087

**OPINION**

---

**APPEARANCES**:

Craig A. Falcone
SACCHETTA & FALCONE
308 East Second Street
Media, PA 19063

   *On behalf of Plaintiff*.

Thomas V. Ayala
KLEHR HARRISON HARVEY BRANZBURG LLP
1835 Market Street
Suite 1400
Philadelphia, PA 19355

   *On behalf of Defendants.*

**O'HEARN, District Judge.**

This matter comes before the Court on a motion for summary judgment by Defendants' Draeger, Inc. and Draeger Medical Systems, Inc. f/k/a Draeger Safety, Inc. (collectively, "Defendants"). (ECF No. 38). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Defendants' Motion for Summary Judgment is **GRANTED.**

**BACKGROUND**[1]

This products liability case arises out of an incident involving a breathalyzer tester: the Alcotest 7110 MK III ("Alcotest 7110"). The Alcotest 7110 is a breath analyzer sold by Defendants which is used for evidential breath alcohol measurements. (Def. SOMF, Def. Br., ECF No. 38-2, ¶ 4). The calibrating unit of the Alcotest 7110 is called the wet bath stimulator, which resembles a glass mason jar with a black lid. (Def. SOMF, Def. Br., ECF No. 38-2, ¶ 9). The wet bath stimulator provides "constant temperature alcohol vapor" that serves as the control against which the individual's breath is measured. (Def. SOMF, Def. Br., ECF No. 38-2, ¶ 11). During the calibrating process, the stimulator solution is poured into the glass jar. (Def. SOMF, Def. Br., ECF No. 38-2, ¶ 11). The solution is required to be changed every thirty days. (Def. SOMF, Def. Br., ECF No. 38-2, ¶ 76).

At the time of the incident, Plaintiff, Charles Grover ("Plaintiff"), was the Chief of the Clementon Police Department ("Department"). (Def. SOMF, Def. Br., ECF No. 38-2, ¶ 115). Plaintiff was a certified Breath Test Operator and as such, he performed nearly all the solution changes on the Alcotest 7110 during his tenure with the Department. (Def. SOMF, Def. Br., ECF No. 38-2, ¶¶ 118, 121). On June 5, 2020, as Plaintiff was performing a solution change, he was unable to unscrew the stimulator lid from the glass jar, so he enlisted help from another officer. (Def. SOMF, Def. Br., ECF No. 38-2, ¶ 145). This officer and Plaintiff then twisted the lid in

---

[1] The facts set forth herein are undisputed unless otherwise noted.

opposite directions while Plaintiff held onto the jar. (Def. SOMF, Def. Br., ECF No. 38-2, ¶ 145). After about fifteen to twenty seconds, the glass jar shattered and one of the glass shards cut Plaintiff's right index finger. (Def. SOMF, Def. Br., ECF No. 38-2, ¶ 145). Defendants note Plaintiff received six stitches, maintained full duty during the ensuing five months of therapy, and that the cut did not impact his ability to shoot as Plaintiff is left-handed. (Def. SOMF, Def. Br., ECF No. 38-2, ¶¶ 149, 158, 160, 165). Plaintiff, in turn, states that his doctors opined that Plaintiff's difficulty flexing his right index finger would interfere with his ability to handle a firearm and with heavy grasping and that this would be a permanent impairment. (Pl. Resp. to Def. SOMF, Pla. Br., ECF No. 46-2, ¶¶ 158–71).

Back in late 2004 or early 2005, Defendants had sold the Alcotest 7110 and glass jar involved in this incident to the Department. (Def. SOMF, Def. Br., ECF No. 38-2, ¶¶ 106, 110).

Plaintiff filed suit and asserted claims for negligence (Count One), products liability under the theories of design defect and failure to warn[2] (Count Two), and breach of implied warranty (Count Three), against Defendants. (Compl., ECF No. 1, Ex. A, ¶¶ 1–22).

## I.   PROCEDURAL HISTORY

On December 7, 2021, Plaintiff commenced this action against Defendants in Superior Court in Camden County. (ECF No. 1, Ex. A). On January 7, 2021, Defendants removed the action to this Court. (ECF No. 1). On May 12, 2023, Defendants filed the present motion. (ECF No. 38). Plaintiff filed opposition on June 29, 2023. (ECF No. 46). Defendants filed a reply on August 8, 2023. (ECF No. 48).

---

[2]  In his response to Defendants' Motion, Plaintiff clarifies that he is not "advancing a manufacturing defect claim, rather Plaintiff's arguments are that of design defect and failure to warn. . . ." (Pl. Br., ECF No. 46-1 at 14).

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court shall grant summary judgment when "a movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in [her] favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once met, the burden shifts to the nonmoving party to "go beyond the pleadings and by [her] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(a)). To withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477

U.S. at 249–50). Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322.

### III.   DISCUSSION

Defendants have moved for summary judgment, arguing that (1) Plaintiff's tort claims are subsumed under the New Jersey Products Liability Act ("NJPLA"); (2) the uncontroverted evidence shows that the Alcotest 7110 was reasonably fit, suitable, and safe for its intended use; (3) Plaintiff's injury was caused by his own reckless mishandling of the glass jar and failure to follow instructions; and (4) even if Plaintiff has stated a claim under the NJPLA, Defendants are government contractors and as such, immune from state law tort claims. (Def. Br., ECF No. 38 at 3–4). After reviewing the record, the Court agrees that Plaintiff's claims are subsumed under the NJPLA, and that Defendants are immune from suit under the government contractor defense.

#### A.  New Jersey Products Liability Act

Plaintiff's claims arise under the NJPLA, N.J.S.A. § 2A:58C-2:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

Though Plaintiff brings separate claims for negligence and breach of implied warranty, in addition to strict liability, "the NJPLA generally subsumes common law product liability claims, thus establishing itself as the sole basis of relief under New Jersey law available to consumers injured by a defective product." *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 817 (D.N.J. 2019) (quoting *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991)); *see also Elezovic v. Motor Coach Indus., Inc.*, No. 22-110, 2022 WL 3316018, at *2 (D.N.J. Aug. 11, 2022) ("Thus,

through the enactment of the [NJ]PLA, common law claims of negligence, strict liability, or breach of an implied warranty that pertain to injury from a product are no longer viable as separate claims."). Indeed, Plaintiff agrees as much. (Pla. Br., ECF No. 46-1 at 7). As all of Plaintiff's claims constitute "personal injury claims arising from product use," they fall within the scope of the NJPLA. *See Calender v. NVR, Inc.*, No. 10-4277, 2012 WL 4482009, at *4 (D.N.J. Sept. 26, 2012), *aff'd,* 548 F. App'x 761 (3d Cir. 2013). Therefore, Plaintiff's claims are cognizable solely under the NJPLA. Yet, to the extent that Plaintiff seeks to pursue separate claims for negligence and implied breach of warranty, summary judgment is granted as to those claims. *See Calender*, 2012 WL 4482009, at *4 (granting summary judgment on claims for negligence and breach of implied warranty because those claims are subsumed under the NJPLA).

### B. Government Immunity

Defendants argue that they are immune from liability because they are government contractors. (Def. Br., ECF No. 38-1 at 34). In response, Plaintiff argues that Defendants are not immune because the government has not exercised any discretion concerning the safety of the Alcotest 7110, and that instead the tests undertaken by the government were to ensure the reliability and accuracy of the readings of the breathalyzer. (Pl. Br., ECF No. 46-1 at 29).

The government contractor defense arose in *Boyle v. United Technologies Corporation*, where the Supreme Court permitted the application of the defense in the context of a military procurement contract. 487 U.S. 500, 509 (1988). There, a United States Marine helicopter pilot was injured after he was unable to escape from a crashed helicopter. *Id.* at 502. In applying the government contractor defense to the manufacturer defendant, the Court explained that contractors' liability for performing work for the federal government was of particular interest to the government and thus the Court reasoned the imposition of liability on government contractors

would "directly affect the terms of Government contracts: either the contractor will decline to manufacture the design specified by the Government, or it will raise its price." *Id.* at 506–07. To protect this interest, the Court articulated a three-prong test under which the contractor must prove that: "(1) the United States approved the reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id.* at 512. "Although *Boyle* involved defects in equipment procured pursuant to a military contract, the law is well-settled in the Third Circuit that the *Boyle* defense 'applies to both military and nonmilitary contractors.'" *Siegman v. Schneider Elec. United States*, No. 15-7072, 2017 WL 5513190, at *4 (D.N.J. Nov. 17, 2017) (quoting *Carley v. Wheeled Coach*, 991 F.2d 1117, 1128 (3d Cir. 1993), *cert. denied*, 510 U.S. 868 (1993)). Yet, "to prevail on summary judgment as to the government contractor defense, Defendants would have to show the absence of a genuine issue of material fact as to all three (3) prongs of the *Boyle* test." *Willis v. BW IP Int'l Inc.*, 811 F. Supp. 2d 1146, 1157 (E.D. Pa. 2011).

Turning to the first prong, "'it is necessary only that the government approve, rather than create, the specifications' for the government contractor defense to apply." *Siegman*, 2017 WL 5513190, at *4 (citing *Carley*, 991 F.2d at 1125). Here, the record is clear that the government approved the specifications of the Alcotest 7110 and wet bath stimulator. Defendants maintain that the federal government, the New Jersey Attorney General, and the New Jersey State Police all approved the specifications, known as the Model Specifications, for evidential breath alcohol testing devices ("EBTs") and calibrating units ("CU"), like the Alcotest 7110 and wet bath stimulator. (Def. Br., ECF No. 38-1 at 34). The Court agrees. The uncontroverted evidence shows that the Model Specifications were developed by the Department of Transportation's National

Highway Traffic Safety Administration ("NHTSA"), *see* (Def. Br., ECF No. 38-4, Exs. 9–10), and adopted in regulations promulgated by the New Jersey Attorney General, N.JA.C. 13:51-3.2, 3.5. (Def. Br., ECF No. 38-4, Ex. 17).

As Defendants note, the Model Specifications state that "any malfunction of the calibrating unit [or EBT] that results in failure to complete any of the tests satisfactorily will result in a finding that it does not conform to the Model Specifications." (Def. Br., ECF No. 38-4, Exs. 9–10). As testified by Defendants' primary technical representative, a break in the glass jar would certainly be a malfunction that would result in the Alcotest 7110 and wet bath stimulator failing the test. *See* (Shaffer Dep., Def. Br., ECF No. 38-4, Ex. 1 at 208:9-22). The Model Specifications outline the rigorous testing that the EBTs and CUs must undergo for approval to be placed on the Conforming Products List ("CPL"). (Def. Br., ECF No. 38-4, Exs. 9–10). This testing includes the precise actions at issue in this case—unscrewing the jar lid and re-screwing it back on the glass jar—that Plaintiff undertook to change the solution as the CU test requires changing solutions. (Def. Br., ECF No. 38-4, Ex. 10). The Alcotest 7110 and the wet bath stimulator with the glass jar passed the required testing to be placed on the CPL. (Def. Br., ECF No. 38-4, Ex. 14). The Alcotest 7110 was also explicitly approved by the New Jersey Attorney General for use in the testing of a person's breath. N.J.A.C. 13:51-3.5. Moreover, Defendants point to evidence that the State had a choice in deciding between a wet bath stimulator with a glass jar or a plastic alternative and yet, the State chose the glass jar. (Chun Rep., Def. Br., ECF No. 38-4, Ex. 3 at 61, 75).

In response, Plaintiff argues that the federal government only tested and approved the Alcotest 7110 and wet bath stimulator for its reliability and accuracy, not for its safety. In support, Plaintiff relies on *Anzalone v. WesTech Gear Corporation*, 638 A.2d 1365 (N.J. App. Div. 1994). But this case is distinguishable and has since been called into question. In *Anzalone*, the plaintiff,

8

a Navy officer, severed his hand when he tripped and grabbed a "ram tensioner," with a sheaving device, for support. *Id.* at 1366. The New Jersey Appellate Division reversed the trial court's application of the government contractor defense to the manufacturer of the ram tensioner because there were no government specifications regard safety mechanisms. *Id.* at 1372. In reaching its conclusion, the Appellate Division distinguished *Anzalone* with *Kleemann v. McDonnell Douglas Corporation*, 890 F.2d 698 (4th Cir.1989), *cert. denied,* 495 U.S. 953 (1990), where the government contractor immunity defense applied, because there the plaintiff had attacked as defective the item upon which the government had exercised its discretion with its specifications. *Anzalone*, 638 A.2d at 1372. Unlike *Anzalone*, and like *Kleemann*, here, the government did exercise its discretion concerning the glass jar at issue. *See also Siegman*, 2017 WL 5513190, at *4 (granting summary judgment on the basis of government contractor immunity because "[o]n the record before this Court, a reasonable factfinder could only conclude that the government did not simply rubber stamp [the defendant's] decision to omit a Kirk Key; on the contrary, the government, not [the defendant], made a reasoned decision not to require a Kirk Key.").

More importantly, this Court recognized that though a divided New Jersey Supreme Court affirmed the Appellate Division's decision in *Anzalone*, that decision was not in accord with the Third Circuit's holding in *Carley*, 991 F.2d at 1125, that the government need only approve, not create, the reasonably precise specifications. *Russek v. Unisys Corp.*, 921 F. Supp. 1277, 1289–90 (D.N.J. 1996) (Irenas, J.) (granting summary judgment based on the government contractor defense after finding the first prong was met based on evidence establishing that the "Postal Service carefully considered the design of the MPLSM operator console and keyboard, and did not delegate its discretion to" the manufacturer defendant).

9

The fact that the Model Specifications do not specifically reference a safety analysis, (Shaffer Dep., Pl. Br., ECF No. 46-7, Ex. H at 160:16–161:5), does not mean the product's functionality and safety was not considered as part of the testing. In fact, as Defendants note, the completion of the solution change—including removing and reattaching the jar lid—is a perquisite to obtaining scientifically reliable results. (Gambone Dep; Def. Br., ECF No. 38-4, Ex. 23 at 32:17-34:8). Additionally, as this Court explained in *Russek*, the Fifth Circuit has affirmed the defense for a contractor where the specifications did not require nor prohibit the safety device that the plaintiff alleged would have prevented the injuries he suffered. 921 F. Supp. at 1288 (Irenas, J.) (citing *Stout v. Borg–Warner Corp.,* 933 F.2d 331 (5th Cir. 1991)). There, because the Army had approved detailed specifications regarding the product at issue, the *Boyle* defense applied. *Id.* (citing *Stout*, 933 F.2d at 335–36). As is the case here.

Here, had the glass jar shattered during testing, it would not have passed the testing necessary to be approved as a breathalyzer by the federal government nor would it have been placed on the CPL. As noted, the testing specifically required the solution change that Plaintiff undertook when the incident occurred. (Def. Br., ECF No. 38-4, Ex. 10). Thus, the federal and state government approved the specifications of the Alcotest 7110 and wet bath stimulator. There are no facts from which a reasonable jury could find that the government simply rubber stamped the Alcotest 7110 and wet bath stimulator specifications. To the contrary, the record supports no finding other than the government approved it. As such, the first factor is met.

As to the second factor, Plaintiff does not contest that the Alcotest 7110 and wet bath stimulator conformed with the specifications. And there is no evidence in the record that these instruments did not conform with the specifications. Again, there is no dispute that the instruments are on the NHTSA's CPL and have been for years. (Def. Br., ECF No. 38-4, Ex. 14). Moreover,

the record shows that the wet bath stimulator was inspected and recertified just a few months prior to the incident in January 2020. (Grover Dep., Def. Br., ECF No. 38-4, Ex. 2 at 94:8–11; 95:25–97:14). For this reason, the second prong of the *Boyle* test is met.

Finally, Plaintiff does not contest the third prong. Regardless, it is certainly met in this case. "The law is clear: a government contractor must only warn of dangers that are 'known to the supplier but not to the United States.'" *Siegman*, 2017 WL 5513190, at *5 (citing *Carley*, 991 F.2d at 1126). Indeed, "[o]nly when the contractor is 'more aware than the government' of the danger, must the contractor warn in order to obtain *Boyle* protection." *Id.* (citing *Carley*, 991 F.2d at 1126). There is no dispute here that the federal government and the State knew of the possibility of the glass jar breaking. Indeed, the record provides that the Department even kept extra glass jars on hand. (Grover Dep., Def. Br., ECF No. 38-2, Ex. 2 at 65:19–24). No reasonable factfinder could conclude on this record that Defendants knew more about the risk of the glass breaking than the government. *See also Siegman*, WL 5513190, at *5 (finding the third prong met and granting summary judgment based on government contractor immunity because, in part, the dangers of arc flashes were common knowledge in the electrical engineering field).

Thus, for all these reasons, the Court concludes that Defendants are in fact immune. *See Russek*, 921 F. Supp. at 1294) ("[W]here the contractor and government have equal knowledge regarding the risk of injury and the contractor builds the product in accordance with reasonably precise specifications that do not require warnings, . . . the contractor has established a *Boyle* defense as to both the design defect and the failure to warn claims."); *Haas v. 3M Co.*, No. 12-2944, 2014 WL 3696043, at *7 (D.N.J. July 24, 2014), *vacated on other grounds*, 613 F. App'x 191 (3d Cir. 2015) ("[T]he government contractor defense applies to both design defect and failure to warn claims."). As such, the Court need not reach the remainder of Plaintiff's claims.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**. An appropriate Order accompanies this Opinion.

**CHRISTINE P. O'HEARN**
**United States District Judge**